The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Willis and Deputy Commissioner W. Bain Jones, Jr., and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission affirms the decision of Deputy Commissioner Jones, as follows.
 *************
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between Plaintiff and Defendant/employer.
3. From September 9, 1970, to January 1, 1972, Defendant/employer was uninsured.
4. Liberty Mutual Insurance Company was the compensation carrier on the risk from January 1, 1972, through December 31, 1977.
5. Cigna Insurance Company was the carrier on the risk from January 1, 1978, through the plant closing in 1985.
6. Documentation has been submitted from which Plaintiff's average weekly wage might be determined.
7. Plaintiff's Social Security earnings report was stipulated into evidence.
8. Plaintiff s employment records with ITT Grinnell were stipulated into evidence.
9. Photographs of the ITT Grinnell plant were stipulated into evidence.
10. A report dated June 17, 1993, from C.D. Young, M.D. was stipulated into evidence.
11. The issue before the Industrial Commission is whether the plaintiff suffers from asbestosis or other occupational diseases for which he is eligible to receive compensation from any or all Defendants.
 EVIDENTIARY RULINGS
The objections raised in the depositions taken in this matter are OVERRULED.
 *************
Based upon all the competent evidence at the hearing and by deposition, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was a sixty year-old married man with five children.
2. Plaintiff began working as a pipe fitter preparing fabricated pipe for Defendant/employer in 1969. Plaintiff worked as a welder and pipe fitter at the Newport News shipyards in Virginia from 1956 until 1969, when he began working for Defendant/employer.
3. During the time Plaintiff worked at the shipyards as a welder and a pipe fitter before going to work for Defendant/employer, he was frequently exposed to significant levels of asbestos dust.
4. Plaintiff left the employment of Defendant/employer in 1984. Subsequently, Plaintiff has worked part time as a pipe fitter for various employers and has farmed tobacco during the summer months. Plaintiff has had no exposure to asbestos on any of his jobs since leaving the employ of Defendant/employer in 1984.
5. When Plaintiff began his work with Defendant/employer, the workplace building consisted of two "bay working areas" which were twenty to thirty feet high and five to six hundred feet long. Plaintiff initially worked as a pipe fitter in his employment there. In approximately 1970, Defendant/employer expanded its business to include two additional bays and a large outside furnace for stress relieving pipe. Bay Three had a small furnace and was also used for stress relieving pipes. At that time, Plaintiff began working at the stress relief furnace in Bay Three. Later, he began working in the large outside stress relieving furnace. The furnaces were composed of asbestos brick and asbestos mortar, which, over time, deteriorated creating a substantial amount of asbestos dust. The floor of the large outside furnace was a railroad car which would be rolled into the main building of the plant in order to transport the pipe being stress relieved. This asbestos dust would settle on the railroad car and would be carried into the main building of the plant by the railroad car.
6. While working at the large outside furnace, Plaintiff was required to go inside the furnace. When inside, the asbestos fiber in the air was visible to the eye. The furnaces were rebuilt with non-asbestos materials sometime in 1974 through 1975.
7. After leaving the employment of the Defendant/employer, Plaintiff began to experience shortness of breath. On August 15, 1990, Plaintiff presented to a pulmonary disease specialist, Donald E. Shanks, M.D. Based upon Plaintiff's occupational history and the findings contained in a 1989 B-reader report of Plaintiff's x-rays, Dr. Shanks diagnosed Plaintiff as having asbestosis and respiratory obstruction. Plaintiff s asbestosis is both permanent and progressive.
8. On August 30, 1994, Plaintiff presented to Robert A. Rostand, M.D., an expert in internal medicine and pulmonary disease. Dr. Rostand reviewed Plaintiff's work history, the report of Dr. Shanks, and the x-rays performed at his request. He also examined Plaintiff. Dr. Rostand's examination of Plaintiff revealed dry, crepitant rales and his examination of chest X-rays revealed bilateral reticular nodule changes at the base of both of Plaintiff's lungs. He diagnosed Plaintiff as having pulmonary asbestosis and opined that it resulted from asbestos exposure in his employment and that such asbestos exposure placed him at a greater risk of contracting asbestosis than the public at large.
9. Allen Hayes, M.D., a certified B-reader, reviewed Plaintiff's x-rays taken August 17, 1994. Dr. Hayes found no clear-cut evidence of either parenchymal scarring or pleural thickening and no pleural abnormalities consistent with the pneumoconiosis. Dr. Hayes did not review Plaintiff's medical history nor did he examine Plaintiff. Medical testimony was elicited from several witnesses to the effect that medical history, physical examination and examination of X-rays are all important in reaching a correct diagnosis. Thus Dr. Hayes' opinion of the X-ray alone is not entitled to as much weight as Dr. Rostand's opinion based on all three. Additionally, there was medical testimony that different readers of X-rays could legitimately come to different conclusions as to their meaning.
10. Plaintiff was employed by Defendant/employer as a pipe fitter from 1969 until late 1984. As of the last date of employment with Defendant/employer, Plaintiff earned $21,734.16. Plaintiff''s average weekly wage was $ 470.96, which yields a compensation rate of $278.78.
11. The Plaintiff developed asbestosis as a result of exposure to asbestos while employed with Defendant/employer and was last injuriously exposed in such employment.
 *************
Based on the foregoing stipulations and findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has asbestosis as defined by N.C. Gen. Stat. § 97- 62. Plaintiff's last injurious exposure to asbestos occurred while working for Defendant/employer before the furnaces were replaced with non-asbestos materials. Therefore, Plaintiff is eligible for compensation pursuant to N.C. Gen. Stat. § 97-61.5.
2. In order for the uninsured Defendant/employer to incur liability in this case, Plaintiff's last injurious exposure to asbestos must have occurred during the time Defendant/employer was uninsured, which was before January 1, 1972. Plaintiff's last injurious exposure occurred after January 1, 1972. Therefore, the uninsured Defendant/employer has no liability. Barbour v. Babcockand Wilcox Construction Company, 101 N.C. App. 564,400 S.E.2d 735 (1991).
3. Defendant/carrier Cigna did not become the carrier on the risk until January 1, 1978, after all exposure to asbestos had occurred. Therefore, Defendant/carrier Cigna has no liability.Barbour v. Babcock and Wilcox Construction Company, 101 N.C. App. 564,400 S.E.2d 735 (1991).
4. The defendant/carrier Liberty Mutual was on the risk at the time of Plaintiff's last injurious exposure and is therefore, liable for payment of compensation due Plaintiff pursuant to the Act. N.C. Gen. Stat. § 97-57.
5. As a result of his contraction of asbestosis, Plaintiff is entitled to receive weekly compensation at the rate of $278.78 per week for a period of 104 weeks commencing as of August, 30, 1994. N.C. Gen. Stat. § 97-61.5.
6. Plaintiff is entitled to receive medical compensation as a result of his contraction of asbestosis, including future medical monitoring for medication and other medical needs. N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to receive additional examinations from the advisory medical committee as a result of his contraction of asbestosis. N.C. Gen. Stat. § 97-61.3; N.C. Gen. Stat. § 97-61.4
 *************
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits is allowed against Defendant/carrier Liberty Mutual Insurance Company. All other claims against the other Defendants in this case are DENIED.
2. For Plaintiff's contraction of asbestosis, Defendant/carrier Liberty Mutual, shall pay Plaintiff at the rate of $278.78 per week for a period of 104 weeks commencing as of August 30, 1994. Amounts which have accrued shall be paid to Plaintiff in lump sum, subject to an attorney fee approved in paragraph five of this Award.
3. The defendant/carrier Liberty Mutual shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of his contraction of the occupational disease, asbestosis.
4. Plaintiff shall undergo additional examinations as provided by law pursuant to the provisions of N.C. Gen. Stat. § 97-61.3 and § 97-61.4.
5. A reasonable attorney fee of twenty-five percent of the compensation due Plaintiff under paragraph one of this Award is approved for Plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due Plaintiff under paragraph one of this Award shall be deducted from the sum and paid directly to Plaintiff's counsel.
6. Defendant/carrier Liberty Mutual shall pay the costs.
This 21st day of July 1998.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ CHRISTOPHER SCOTT COMMISSIONER
S/ _____________________ DIANNE C. SELLERS COMMISSIONER